UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EDISSA LOBO,

              Plaintiff,

  - against -

COMMISSIONER OF SOCIAL SECURITY,

              Defendants.
------------------------------------------------------------------X

**MEMORANDUM AND ORDER**
17-CV-1392 (RRM)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Edissa Lobo ("Plaintiff") brings this action against the Commissioner of the Social Security Administration ("Defendant" or "Commissioner"), pursuant to 42 U.S.C. § 405(g), seeking review of defendant's determination that plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act ("SSA") or Supplemental Security Income under Title XVI of the SSA. Plaintiff and defendant have cross-moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Def.'s Mot. J. Pls. (Doc. No. 18); Pl.'s Mot. J. Pls. (Doc. No. 16).)

      For the reasons set forth below, defendant's motion is DENIED, and plaintiff's motion is GRANTED in part and DENIED in part. The matter is remanded to the Commissioner for further proceedings consistent with this Memorandum and Order.

## PROCEDURAL HISTORY

      Plaintiff filed claims for disability insurance benefits under Title II of the Social Security Act ("SSA") on August 22, 2013, alleging an onset of disability on November 8, 2010. (Tr. 204-205.) Plaintiff's claim was denied at the initial level on December 4, 2013. (Tr. 117.) Plaintiff requested a hearing before an administrative law judge ("ALJ") on January 8, 2014. (Tr. 129-

130.) Plaintiff appeared for a hearing before ALJ Jay Cohen ("the ALJ") at two separate hearings, the first on May 28, 2015, and the second on October 22, 2015. (Tr. 44-73, 74-110.) The case was denied by ALJ Cohen in a decision dated November 24, 2015. (Tr. 11-24.) Plaintiff filed an appeal of the ALJ's decision on December 7, 2015. (Tr. 5.) On January 19, 2017 the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision the final determination in the case. (Tr. 1-4.) Plaintiff then filed this action in federal court. (Compl. (Doc. No. 1).)

## BACKGROUND

### I.   Plaintiff's Disability Claim

Edissa Lobo was born on August 19, 1951. (Tr. 204.) She completed the ninth grade and is able to read and write and to communicate in English. (Tr. 76, 79.)

Plaintiff's past relevant work was as a "filing representative," which consisted of picking up building permit applications from contractors and taking them to the city building departments for filing. (Tr. 49-51.) Plaintiff testified that she left the position because she had issues with her heart and that she gets heart palpitations. (Tr. 54.) At the time that plaintiff filed her claim, she alleged that she was disabled due to "open heart surgery, triple bypass and heart condition." (Tr. 110.)

In his decision the ALJ found that plaintiff had "the following severe impairments: coronary artery disease, hypertension and diabetes." (Tr. 16). He additionally found that plaintiff has the following non-severe impairments: plantar fasciitis, metatarsalgia, and hammertoes. (Tr. 16.)

A "Disabilty Report – Field Office" was filed on August 26, 2013. The report indicates the name of an interviewer W. Trinidad and states that it was completed by L. Modesta. The

form states that there was no contact with the claimant and incorrectly identifies her as a male. (Tr. 221-222.) The form is repeated in the record. (Tr. 243-244.)

An undated "Disability Report – Adult" was filed in the case. (Tr. 223-230.) The form indicates that it was completed by David Pereira, a member of staff at the law firm of Pyrros and Serres. (Tr. 224.) The form indicates that plaintiff completed the 12th grade. (Tr. 225.) It also indicates that she worked for EBS Contractors, which was described as a "computer business". *(Id.)* The form indicates that plaintiff's job was a "clerical work from home position," in which she "sat down and [was] working on a computer most of the day." (Tr. 226.) It is of note that the information provided by Mr. Pereira conflicts with plaintiff's testimony regarding her education and job duties. (Tr. 49-51.) Additionally, it is noted that EBS Contractors is not a computer business but is a construction company. Insofar as the report states on its face that it was not completed by plaintiff and contains clearly erroneous information, the Court will not consider it as part of the administrative record.

On October 7, 2013, plaintiff completed a handwritten "Activities of Daily Living Form," in which she indicated that she did not have problems paying attention or in following written and spoken instructions. (Tr. 233.) She indicated that she visits others monthly, goes to church once a week, cannot lift, cannot stand for long, and is careful when walking. (Tr. 235.) Plaintiff noted that she grocery shops once a month and that she watches TV and exercises every day. (Tr. 236.) Plaintiff indicated that she can only do light work because she has heart palpitations. (Tr. 237.) She stated that she can walk, drive a car, and use public transportation. *(Id.)* She also stated that she can feed herself, use the toilet, and prepare meals on a regular basis, but that she did not care for pets, children, or others, and that she cannot lift heavy things or go to work. (Tr. 238-39.)

An undated and unsigned "Disability Report – Appeals" indicated that plaintiff had developed and been treated for foot pain. (Tr. 245-25.)

## II. The Written Medical Evidence

### A. Jamaica Hospital

On November 2, 2011, plaintiff suffered palpitations and called for an ambulance which took her to Jamaica Hospital. (Tr. 366.) A catherization was performed which showed three vessel coronary artery disease ("CAD") with left main coronary artery disease. (*Id.*) An echocardiogram showed an ejection fraction of 55%. (*Id.*) Further testing was performed and a catherization was performed on November 4, 2011, which showed moderate systemic hypertension and mildly elevated left ventricle end-diastolic pressure. (Tr. 409.) A summary of the notes indicated that there was "severe left main disease with Three Vessels CAD." (Tr. 410.)

### B. Mt. Sinai Hospital

On November 6, 2011, plaintiff was transferred by ambulance to Mt. Sinai Hospital, and she underwent open heart triple bypass surgery on November 8, 2011. (Tr. 306-310, 366-403.) It was noted that plaintiff needed to undergo diuresis and complained of a severe headache which resolved. (Tr. 367.) Plaintiff had decreased breathing at the left base. (*Id.*)

### C. Dr. Javed Suleman

Plaintiff saw Javed Suleman, MD on October 31, 2011, and at that time, Dr. Suleman recommended a stress test and an echocardiogram due to ventricular hypertrophy. (Tr. 366.) Dr. Suleman examined plaintiff again after her triple bypass surgery and noted that she was "doing well" and was able to walk for ten minutes twice a day on a treadmill. (Tr. 305.) On December 5, 2011, an echocardiogram showed that the left ventricle was mildly to moderately impaired with an ejection fraction of 40-50%. (Tr. 424.) It was noted that the aortic valve was slightly

thickened, that there was mild regurgitation in the mitral, tricuspid, and pulmonic valves, and a small amount of generalized pericardal effusion. (*Id.*) On November 28, 2011, and December 5, 2011, plaintiff was examined by Dr. Suleman and he noted "abnormal" rubs and gallops. (Tr. 419, 420.) On March 12, 2012, Dr. Suleman again noted "abnormal rubs and gallops. (Tr. 422.) His notes from July 18, 2012, indicate that a transthoracic echocardiogram revealed mild concentric left ventricular hypertrophy and mildly impaired left ventricular systolic function, with an ejection fraction of 45%. (Tr. 426.)

### D.  Neela Patel, MD and Manish Kumar, MD

On December 16, 2011 plaintiff was seen by Neela Patel, MD, for follow-up for her diabetes. (Tr. 552.) It was noted that her diabetes was not on target. (*Id.*) On December 29, 2011, Dr. Patel again noted that plaintiff's diabetes was not controlled. (Tr. 551.) Medical notes from February 23, 2012, indicate that plaintiff's diabetes is controlled but also lists her weight, which is normally 150-160 pounds, as being 337 pounds and appears to pertain to a different patient. (Tr. 550.) Notes of April 12, 2012, indicate that plaintiff's weight was again 155 pounds and that her diabetes was not controlled with medication. (Tr. 546, 562.) On September 10, 2012, Dr. Patel signed a certificate for plaintiff confirming that she had no communicable diseases which would prevent her from training to become an esthetician. (Tr. 689-690.) Lab testing performed on March 29, 2012, and September 11, 2012, showed that plaintiff had severely elevated blood sugars. (Tr. 654, 661, 664.) A September 17, 2012, visit with Dr. Patel noted that plaintiff's diabetes was not controlled with medication. (Tr. 545.) Visits on November 5, 2012, and February 7, 2013, indicated similar findings. (Tr. 544, 543.)

On April 5, 2013, plaintiff was seen by Dr. Manish Kumar, who diagnosed diabetes, hypertension, hyperlipidemia, hyperkalemia, and abnormal liver function tests. (Tr. 540.)

Bloodwork taken the next day indicates uncontrolled diabetes. (Tr. 647.) On September 13, 2013, an echocardeiogram showed mild concentric left ventricular hypertrophy and overall low-normal left ventricular systolic function (ejection fraction between 50-55%). (Tr. 430-431.) On September 25, 2013, a stress test revealed that there was no typical angina but that the response was positive for inducible ischemia and a partially reversible anterior defect. (Tr. 433.) On May 17, 2013, Dr. Kumar noted the ongoing medical conditions of diabetes, hypertension, hyperlipidemia, and abnormal liver function tests. (Tr. 539.) He made similar findings on August 20, 2013. (Tr. 533.) An EKG performed on October 2, 2013, was considered abnormal and showed possible left atrial enlargement and a T wave abnormality. (Tr. 586, 621.) On May 5, 2014, plaintiff was noted to have "dizziness and giddiness." (Tr. 526.)

### E.  David Shechter, D.P.M.

Plaintiff was seen by podiatrist David Z. Shechter, D.P.M., for an initial examination on October 23, 2013. (Tr. 504.) Plaintiff complained of recent foot pain, which was relieved by rest. (*Id*.) The examination showed localized swelling, palpable pulses, intact sensation, no heat or redness, no gross deformity, and no limited or painful range of motion in both feet. (*Id*.) Dr. Shechter determined that the diabetic foot risk was "0" and metatarsalgia/bursitis on the 2, 3, 4 metatarsals left and right. Dr. Shechter recommended that Plaintiff buy new shoes, and that she wear thick soled shoes. He also prescribed AmLactin lotion. (*Id*.) During a follow-up examination with Dr. Shechter on January 9, 2014, Plaintiff had some tenderness and mild swelling. (*Id*. at 505.) The examination should pulpable pulses, intact sensation, and no limited or painful range of motion in both feet. (*Id*.) Dr. Shechter recommended foot orthotics. (*Id*.)

*Non-Treating Sources*

      **F.  Dr. John Fkiaris**

On October 30, 2013, John Fkiaris, MD, an internist, examined plaintiff at the request of the Commissioner. (Tr. 404-407.) His report notes that plaintiff told him she had been hospitalized in 2009 and in 2010 at Jamaica Hospital for chest pain and palpitations. (Tr. 404.) Plaintiff also told Dr. Fkiaris that she gets chest pain and shortness of breath when walking more than two blocks, climbing more than 20 steps, and lifting more than five pounds. (*Id.*) He noted that plaintiff's blood pressure was low at 80/60 and that she had a heart rate of 72. (Tr. 405.) He noted that plaintiff had a normal gait, could walk on heels and toes without difficulty, and could only squat halfway. (*Id.*) Plaintiff displayed a normal stance, and used no assistive device. (*Id.*) She was able to get on and off the examination table without help and could rise from a chair. (*Id.*) Her vision was 20/50 bilaterally. (*Id.*) Dr. Fkiaris noted that plaintiff had a supple neck with no masses, thyromegaly, or bruits. (Tr. 406.) He noted that her lungs were normal in diameter and percussion, clear to auscultation, and that there was normal diaphragmatic motion and no significant chest wall abnormality. (*Id.*) Musculoskeletal examination was within normal limits, but the neurological examination revealed decreased sensation in the feet. (*Id.*) Dr. Fkiaris diagnosed plaintiff with diabetes, hypertension, a history of triple bypass cardiac surgery, and history of myocardial infarction. (Tr. 406.) Dr. Fkiaris gave plaintiff a "fair" prognosis. (Tr. 407.) He opined that plaintiff was restricted from activities requiring moderate or greater exertion. (Tr. 407.) Dr. Fkiaris also opined that plaintiff was restricted from lifting, carrying, pushing, and pulling, and that she has a moderate limitation in squatting, kneeling and crouching. (*Id.*)

### III. Hearing Testimony

#### A. *May 28, 2015 Hearing*

##### 1. Plaintiff's Testimony

Plaintiff testified that she lived with her husband and her three adult children in a house, that she had a 9th grade education, and had no vocational training. (Tr. 49.) Twenty years ago, she took a test administered by the city to be a "filing representative." (*Id.*) She testified that she last worked in 2010 as a filing representative and that she went to the building department to get permits. (*Id.*) She testified that she worked for a number of different companies, and that they would give her a form to take to the building department and that she would take them. (Tr. 51.) Plaintiff testified that she would do paperwork for the companies and that at times she had to type the estimates onto the forms. (Tr. 52-53.) She testified that she cannot do this anymore because the subways and trains have steps and she will get palpations which hurt so much that she has to go to the hospital. (Tr. 54.) She stated that she does not have problems sitting, but has a problem with standing, and that she can lift a gallon of milk. (Tr. 55.) She also testified that she sees a cardiologist, Dr. Suleman. (*Id.*) She stated that she had a bypass operation in 2011, and it helped a little, but that she had a heart attack after the bypass. (Tr. 56.) Plaintiff testified that she takes medication for her heart, and that she has high blood pressure that her doctors were trying to get under control. (Tr. 56-57.) She stated that she was hospitalized in December 2014 for the heart attack, pressure, and palpitations, and that they first put in a stent and then did an ablation. (Tr. 57.) Plaintiff testified that the ablation was performed by Dr. Keller. (Tr. 58.) She said that she has diabetes and is treated with medication by Dr. Kumar. (*Id.*) Plaintiff testified that she has plantar fasciitis and hammertoes and that she sees a podiatrist, Dr. Shechter, who said she needs special shoes. (Tr. 59.) Plaintiff could not remember if the podiatrist had

8

prescribed orthotics but said that he had not recommended surgery. (Tr. 60.) She stated that she watches TV and walks around the house but very rarely goes out, "maybe once in a month." (Tr. 61.) Plaintiff testified that she gets headaches if she reads, but can drive a car and cleans her own bedroom. (*Id.*) She stated that she gets palpitations daily, though they are not as severe after the ablation, and that she has to lie down when she has palpitations; if she does not, the palpitations become worse and she needs to go to the hospital. (Tr. 62.) Plaintiff stated that she has problems with shortness of breath, does not breathe properly when sleeping, gets tired very easily, and cannot walk half a block. (Tr. 63-64.) She testified that she used to be active, but that she is afraid to be active because she worries she will have palpitations, and that her heart made her tired and it "feels like it's going to stop any minute". (*Id.*) Plaintiff also stated that she will feel tired if she stands in a line, and she did not file documents or interview people. (Tr. 66, 68, 70.) She testified that she never used a computer and would at times type with one finger on a typewriter, one or two times a week. (Tr. 69.)

### 2. Testimony of Vocational Expert Melissa Fass-Karlin

Melissa Fass-Karlin testified that she could not find any job like plaintiff's job. (Tr. at 68.) She thought initially that plaintiff's work was as an administrative clerk, which is light and semi-skilled. (Tr. 68.) She asked if plaintiff filed any documents or performed other clerical tasks such as using a computer. *(Id.)* She opined that plaintiff would have a skill for typing if she could only type with one finger. (Tr. 69.) She asked if plaintiff interviewed people and was told that she did not. (Tr. 69-70.) She stated that she was confused as to what plaintiff's job entailed and opined that the job sounded closest to that of an interviewer. She testified that even the job of interviewer was light and unskilled with no transferable skills. (Tr. 70.) She repeated her statement that plaintiff had no transferable skills. (Tr. 71.)

B.     *October 22, 2015 Hearing*

   1. **The Administrative Law Judge**

The ALJ summarized plaintiff's testimony.  He found that plaintiff had a ninth-grade education, cannot climb stairs, can walk half a block, sit without any problems, stand for 20 minutes, lift nothing with her left arm, and lift a gallon of milk in her right arm.  (Tr. 77.)  Plaintiff sees Dr. Suleman for her heart and had a coronary bypass in 2011, and a myocardial infarction afterward.  She had a cardiac ablation at Lenox Hill Hospital in 2014.  She sees Dr. Kumar for hypertension and for diabetes which is controlled by medication.  (Tr. 78.)  Plaintiff cooks for herself and her husband, she cleans only her bedroom, she cannot shop but can drive, she cannot read and cannot climb the stairs to take public transportation, and she socializes if her husband takes her.  (*Id.*)  The ALJ stated that plaintiff testified that she has palpitations daily which are severe but less after the ablation and that she gets tired quickly.  (*Id.*)  The ALJ stated that plaintiff testified that she had a ninth-grade education and that her past relevant work was filing applications for building permits.  The ALJ said, "the testimony at the previous hearing was that she did file those applications by computer."  (Tr. 79.)  The ALJ also recounted the prior vocational expert's testimony, stating that she said it was "administrative clerk at the light level SVP 4, and the DOT number was 219.362-010."  (Tr. 95.)

   C. **Dr. Oliver**

Dr. Oliver testified as a medical expert at the request of the Commissioner.  Dr. Oliver did not examine plaintiff and testified on the basis of reading plaintiff's medical records.  (Tr. 80-81.)  Dr. Oliver stated that plaintiff had a three-level bypass and that the operation went well.  (Tr. 81.)  He testified that on a subsequent stress test in September 2014, plaintiff was noted to have a reversible anterior defect.  (Tr. 81.)  He stated that "the people who were analyzing the

test results were just close minded as to whether there was really anything of importance there or not." (Tr. 81-82.) Dr. Oliver noted that the records contained "all kinds of wrong information. The dates of the catherization and all kinds of things related to the bypass." (Tr. 82.) He stated that plaintiff had coronary artery disease which was sufficiently severe to need a three-vessel bypass operation, but that since that time, she had "been doing very well." (*Id.*) He noted that she "had one other problem" and had the ablation procedure. (*Id.*) Dr. Oliver described the ablation procedure, stating that it "was successful." (Tr. 83.) He stated that he felt that "her heart function is good," and added that he did not "feel competent on any other problems" because his area of medicine was cardiology. (*Id.*) When asked if plaintiff had diabetes, Dr. Oliver stated that he did not know and "again, that's not an area of expertise that I have." (Tr. 84.) The ALJ asked about the limitations of work functions "limiting this to the cardiac area." (Tr. 84.) Dr. Oliver testified that with regard to cardiac issues alone, plaintiff could certainly do office work. (Tr. 85.) Plaintiff could lift 10 pounds and occasionally 15 pounds. (Tr. 85.) He then stated that plaintiff could lift 10 pounds occasionally. (*Id.*) Plaintiff could stand for 6 hours and walk for 4 to 6 hours. (Tr. 86.) She could not work in a dusty environment or in extremes of heat or cold. (Tr. 87.) Plaintiff would not have more than a usual amount of fatigue. (Tr. 88.) He stated that in the year prior to her bypass, plaintiff would have had discomfort with vigorous walking but not if sitting quietly. (Tr. 89.) He stated that in that one year, it was possible that she might have had fatigue but did not think it would affect her from showing up for work. (Tr. 91.)

### D.   Vocational Expert Peter Manzy

Vocational Expert Peter Manzy also testified.  The ALJ incorrectly advised that the prior vocational expert had listed plaintiff's past relevant work as "Administrative Clerk." (Tr. at 95.)

11

Mr. Manzy asked if the prior vocational expert had heard plaintiff's testimony, and he was told yes. (*Id.*) Mr. Manzy then advised that he found plaintiff had performed as a "data entry clerk" which is sedentary with an SVP of 4 and DOT No. 203.582-054. (*Id.*) He testified that the Administrative Clerk positon required filing and other things which plaintiff did not do. Mr. Manzy testified then that plaintiff's job looked like File Clerk, light with an SVP of 3 at DOT 206.387-034. (*Id.*) The ALJ responded, "I'm looking at the hearing reporter's notes. It said that, the claimant said that she used to go to the Building Department to get building permits." (Tr. 96.) The ALJ stated that plaintiff testified she would fill out forms. (Tr. 97.) Mr. Manzy responded that plaintiff would then spend six hours sitting and two hours filing the forms. (*Id.*) Mr. Manzy testified that plaintiff would take forms, input them into a computer, and do some paper filing. (Tr. 97-98.) Plaintiff responded that she did not file anything but simply took the permits to the building department and stood in line two to four hours. (Tr. 98.) Mr. Manzy asked plaintiff if she filled out forms and she said that she did not. (*Id.*) Plaintiff again explained that she never worked on a computer. (Tr. 99.) Plaintiff explained that she did not work at home. (*Id.*) Plaintiff testified that she would occasionally help people who did not understand English to fill out passport forms but did not get paid for that. (Tr. 100-101.) The Vocational Expert then stated that such work was as a "general office clerk" which is light with an SVP of 3 and DOT number 209.562-010. When asked by the ALJ if a person who was capable of lifting 10 pounds and standing and walking for six hours could do the job of data entry clerk, Mr. Manzy answered that the person could perform the jobs of data entry clerk, file clerk, and general office clerk but not the position of administrative clerk. (Tr. 104-105.) Mr. Manzy testified that light jobs are classified as light because they either have a limitation to lift 10 to 20 pounds, or have a limitation to stand and walk six or eight hours, but that both did not

have to be met. (Tr. 106-107.) He testified that a person off task 15 percent of the time would have an erosion of the work base of 80 to 90 percent. (Tr. 107.) For the jobs he mentioned, all would be precluded. (Tr. 107.)

### E. Plaintiff

Plaintiff testified to clarify the record. When asked by the ALJ if someone helped her to fill out the applications, she responded that they did and that she did not review the application. (Tr. 103.)

## STANDARD OF REIVEW

### I. Review of a Denial of Social Security Benefits

In reviewing the final determination of the Commissioner, a court does not determine *de novo* whether the claimant is disabled. *See Schaal v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "'[S]ubstantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Where the Commissioner makes a legal error, a "court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ." *Townley v. Heckler,* 748 F.2d 109, 112 (2d Cir. 1984) (citation omitted). An ALJ's failure to apply the correct legal standards is grounds for reversal. *See Townley,* 748 F.2d at 112 (citation omitted).

## II. Eligibility for Disability Benefits

A person is considered disabled for Social Security benefits purposes when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see, e.g.*, *Butts v. Barnhart,* 388 F.3d 377, 383 (2d Cir. 2004), *amended on other grounds,* 416 F.3d 101 (2d Cir. 2005). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see, e.g.*, *Butts*, 388 F.3d at 383.

In determining whether an individual is disabled for disability benefit purposes, the Commissioner must consider: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." *Mongeur v. Heckler,* 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

The Social Security Administration's regulations require a five-step analysis for determining whether a claimant is disabled:

[1] First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

[2] If he is not, the Commissioner next considers whether the claimant has a severe impairment which significantly limits his physical or mental ability to do basic work activities.

[3] If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity.

[4] Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

[5] Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

See *DeChirico v. Callahan,* 134 F.3d 1177, 1179–80 (2d Cir. 1998); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

### I.  ALJ Cohen's Decision

ALJ Cohen engaged in the required five-step analysis. At the first step, he found that plaintiff did not engage in substantial gainful activity since the time of her alleged onset date of November 8, 2010, through her date last insured of December 31, 2014. (Tr. 16.) At step two, ALJ Cohen found that plaintiff had the following severe impairments: coronary artery disease, hypertension, and diabetes. (Tr. 16.) He found that plaintiff also suffered from the non-severe impairments of plantar fasciitis, metatarsalgia, and hammertoes. (*Id.*) At step three, ALJ Cohen found that these impairments did not meet or qualify as the medical equivalent of any of the listed impairments in Appendix 1 of the regulations. (Tr. 17.) ALJ Cohen did not specifically

15

consider any Listing. (*Id.*) ALJ Cohen then assessed plaintiff's residual functional capacity ("RFC"), which must be based on all relevant medical and other evidence in the record. *See* 20 C.F.R. § 404.1520(e). He determined that plaintiff had the RFC to perform at less than the full range of light work as defined in 20 C.F.R. § 404.1567(b). She could lift and carry 10 pounds occasionally, sit, stand, and walk six hours in a workday, and must avoid pulmonary irritants and extremes of temperature. (*Id.*) At the fourth step, ALJ Cohen found that plaintiff was able to perform past relevant work as defined by vocational expert Peter Manzy, in the form of general office clerk, light and semi-skilled at SVP 3 with a DOT #209.562-010; as well as data entry clerk, which is sedentary and semi-skilled with an SVP of 4 and DOT # 203.582-054; and file clerk I which is light and semi-skilled with an SVP of 3 and DOT # 206.387-034. (Tr. 20.) The ALJ also noted that the vocational expert at the first hearing identified the past relevant work as administrative clerk at the light level and semi-skilled with an SVP of 4 and DOT # 219.362-010. (*Id.*)

## II.     Plaintiff's Challenge to the ALJ's Decision

Plaintiff appeals the ultimate finding of ALJ Cohen that claimant has not been under a disability, as defined in the Social Security Act, from November 8, 2010, through the date last insured of December 31, 2014. She argues that the ALJ failed to properly assess her testimony and that as a result, the vocational testimony was based upon flawed information. She also argues that the ALJ failed to properly evaluate the medical evidence, that the ALJ did not adequately develop the medical record, and that the ALJ erroneously assessed plaintiff's credibility.

Because the Court remands as to the first issue raised, the other issues will not be addressed.

### A. The ALJ failed to properly assess plaintiff's testimony and the vocational expert's testimony was based upon flawed information.

A great deal of confusion surrounds an Adult Disability Report which gave information that was contrary to the testimony of plaintiff. The report, which appears in the transcript at pages at 223-232, states on its face that it was completed by David Pereira and not by plaintiff. (Tr. 224.) The form indicates that plaintiff worked as a data entry clerk at EBS Contractors, which it lists as a computer business. (Tr. 225.) It is notable that EBS Contractors is a construction/building company and has nothing to do with computers. Based upon the fact that the document was not completed by plaintiff and that it contains clearly erroneous information, we disregard the information contained therein. At the second hearing the ALJ asked Plaintiff about the form and asked if it was filled out by her, to which she said it was not filled out by her. (Tr. 103.) The ALJ asked her if she ever reviewed it before it was filed, and she said that she did not. (*Id.*)

Plaintiff's testimony at the first hearing was that she never used a computer and did not own a computer. (Tr. 68-69.) Plaintiff also testified at that hearing that she would use a typewriter one or two times a week to fill in a form, but that she could only type with one finger. (Tr. 69.) Plaintiff testified at that hearing that her job was to take documents to a building department and that she would stand in line to file them. (Tr. 66.) Plaintiff testified that she did not file anything.

At the second hearing plaintiff testified again that her job was to take paper applications from builders to the local permit office and stand in line for two to four hours to file them. (Tr. 97.) Plaintiff testified that she did not work on a computer and that she never worked at home. (Tr. 99.) When asked if she filled out paperwork, plaintiff testified that at times, she had helped

17

people who could not speak English to fill out passport forms by hand but that she had not been paid for that and it was not a part of her job. (Tr. 100-101.)

Vocational Expert Melissa Fass-Karlin appeared at the first hearing and listened to plaintiff's testimony. She opined after hearing plaintiff's testimony that plaintiff had no clerical skills and that she had no transferable skills at all. (Tr. 70-71.) Although Ms. Fass-Karlin had initially opined that plaintiff had worked as an Administrative Clerk, she clearly recanted that statement after hearing plaintiff's testimony. (Tr. 70-71.)

At the second hearing the ALJ started the hearing by stating that plaintiff had testified at the first hearing that her past relevant work was filing permits by computer. (Tr. 79.) The ALJ advised vocational expert Manzy that the prior vocational expert had found that plaintiff's past relevant work was as an Administrative Clerk after hearing plaintiff's testimony. (Tr. 95.) Both of those statements were clearly erroneous, as plaintiff was clear that she did not know how to use a computer, and Ms. Fass-Karlin recanted her testimony regarding plaintiff's past relevant work, stating that from her testimony, it appeared that plaintiff's past work was unskilled. Plaintiff explained to Mr. Manzy that she did not fill out forms. (Tr. 98.) Plaintiff's attorney explained that plaintiff said she had not done paper filing. (*Id.*) At one point, Mr. Manzy asked if plaintiff simply took applications to the building departments "like a messenger," to which she responded "yes." (*Id.*)

The positions which Mr. Manzy identified are General Office Clerk, light and semi-skilled at SVP 3 with a DOT #209.562-010; as well as Data Entry Clerk, which is sedentary and semi-skilled with an SVP of 4 and DOT # 203.582-054; and File Clerk I which is light and semi-skilled with an SVP of 3 and DOT # 206.387-034. (Tr. 20.) The descriptions which are set forth in the Dictionary of Occupational Titles for the positions are:

> General Office Clerk, general office clerk, light and semi-skilled at SVP 3 with a DOT #209.562-010. "Performs any combination of the following and similar clerical duties requiring limited knowledge of systems or procedures: Writes, types, or enters information into computer, using keyboard, to prepare correspondence, bills, statements, receipts, checks, or other documents, copying material from one record to another. Proofreads records or forms. Counts weighs and measures materials. Sorts and files records. Retrieves money from customers and deposits money in bank. Addresses envelopes or packages by hand, or with typewriter or addressograph machine. Stuffs envelopes by hand or with envelope stuffing machine. Answers telephone, conveys messages and runs errands. Stamps, sorts and distributes mail. Stamps or numbers forms by hand or machine. Photocopies documents using photocopier.
>
> Data Entry Clerk, sedentary and semi-skilled with an SVP of 4 and DOT # 203.582-054. Operates keyboard or other data entry device to enter data into computer or onto magnetic tape or disk for subsequent entry: Enters alphabetic, numeric, or symbolic data from source documents into computer, using data entry device, such as keyboard or optical scanner, and following format displayed on screen. Compares data entered with source documents, or re-enters correct data. May compile, sort, and verify accuracy of data to be entered. May keep record of work to be completed.
>
> File Clerk I, light and semi-skilled with an SVP of 3 and DOT # 206.387-034. "Files records in alphabetical or numerical order, or according to subject matter or other system: Reads incoming material and sorts according to file system. Places cards, forms, microfiche or other materials in storage receptacle, such as file cabinet, drawer, or box. Locates and removes files upon request. Keeps records of material removed, stamps accuracy of material to be filed. May enter information on records. May examine microfilm and microfiche for legibility, using microfilm and microfiche viewers. May color-code material to be filed to reduce filing errors. May be designated according to subject matter filed, such as Change-Of-Address Clerk (clerical); or according to material filed, such as File Clerk Correspondence (clerical).

None of the positions which are listed are similar to that which plaintiff described. Each of the positions listed requires skills which are far more advanced than anything she described. Ms. Fass-Karlin alone heard plaintiff's testimony regarding her job. Mr. Manzy was instead given the ALJ's erroneous re-counting of plaintiff's testimony. If the testimony of Ms. Fass-Karlin is to be correctly credited, then plaintiff's past relevant work was unskilled and the jobs listed are not unskilled but are instead semi-skilled positions.

An ALJ may rely on a vocational expert's testimony regarding a hypothetical only as long as "there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion," *see Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983), and accurately reflect the limitations and capabilities of the claimant involved, *see Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

Substantial evidence did not support Mr. Manzy's testimony. He listed positions which require skill and knowledge which plaintiff consistently testified that she does not have. Moreover, Mr. Manzy's testimony is inconsistent with Ms. Fass-Karlin's testimony. The ALJ has not resolved the inconsistency in Ms. Fass-Karlin's testimony and the testimony of Mr. Manzy. For this reason, the case should be remanded and testimony should be obtained as to the true nature of plaintiff's past relevant work.

## CONCLUSION

For the reasons stated herein, defendant's motion for judgment on the pleadings is DENIED, plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part, and the matter is remanded to the Commissioner of Social Security for further proceedings consistent with this opinion. The Clerk of Court is respectfully directed to enter judgment accordingly, and close this case.

SO ORDERED.

Dated: Brooklyn, New York
     September 27, 2019

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge